[Nos. 24016-1-I; 25100-7-I.   Division One.   May 13, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. ARMONDO TREMAINE SHELBY, *Appellant.*

*Scott Busby* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

PEKELIS, J.—Armondo Tremaine Shelby appeals his two convictions for criminal trespass in the second degree. Shelby contends that RCW 9A.52.080 and RCW 28A.87.055 are concurrent statutes, and that the State improperly charged him under RCW 9A.52.080, the "general" criminal trespass statute, rather than RCW 28A.87.055, the "special" statute which prohibits disobeying a valid order to leave school property.

I

On October 31, 1988, Jerry Perringroth, the assistant principal of Hazen High School, encountered Armondo Tremaine Shelby and two friends in the high school hallway. Shelby was not a student at Hazen High School. Perringroth told Shelby that he could not be on the high school campus without authorization. Perringroth advised him to go to the front office and check in. Perringroth also told him that he must wait outside for his friend until 2:20 p.m. The two assistant vice–principals in the front office, Julie Goldsmith and Cliff Donley, told Shelby that he could sit in the school until the bell rang, and then go out to the front of the building. When the bell rang, Shelby did not leave the school. Donley confronted Shelby and told him to leave. Shelby left the building.

A few minutes later, Shelby reentered the building and confronted Goldsmith. The police were called when Shelby became belligerent. Perringroth escorted Shelby off the school premises. Shelby returned to school property a few minutes later. Security officer James Swenning told Shelby to leave. He refused. Subsequently, Officer Larry Strauss of the Renton Police Department arrived for the second time that day. Officer Swenning and Officer Strauss restrained Shelby and arrested him for trespassing.

On December 5, 1988, the State filed an information charging Shelby with criminal trespass in the second degree in violation of RCW 9A.52.080. The trial court held a fact–finding hearing. After the State rested, Shelby moved to dismiss on the grounds that he had been improperly charged under RCW 9A.52.080, the general criminal trespass statute, rather than RCW 28A.87.055, a special statute which prohibits disobeying a valid order to leave school property. The trial court denied the motion.

On October 18, 1989, the trial court entered findings, conclusions, and judgment. The trial court found that Shelby knowingly entered and remained on Hazen High School property although he was not authorized to do so. The trial court also found that Shelby was warned that his

entering and remaining were unlawful. Accordingly, the trial court found Shelby guilty of criminal trespass in the second degree.

## II

On March 22, 1989, Shelby and a friend appeared on the grounds and in the hallway of McKnight Middle School.[1] Shelby was not a student at McKnight Middle School. The assistant principal, Carolyn Bondy, informed Shelby that he could not stay on the school campus.

Rather than leaving, Shelby and his companion moved closer in to the building to stand right outside the room where a school activity was in progress. Bondy again asked them to leave and informed them they were trespassing. Shelby answered with an obscenity. The principal then asked them to leave and police were called. Shelby and his companion left prior to their arrival. Approximately 15 minutes elapsed between the first time Shelby was asked to leave and his departure.

On May 9, 1989, the State filed an information charging Shelby with criminal trespass in the second degree in violation of RCW 9A.52.080. The trial court held a fact–finding hearing. After the State rested, Shelby moved to dismiss on the grounds that he had been improperly charged under RCW 9A.52.080, the general criminal trespass statute, rather than RCW 28A.87.055, a special statute which prohibits disobeying a valid order to leave school property. The trial court reserved its ruling on the motion.

After the defense rested, the trial court set the matter over for closing arguments and for further consideration of the defense motion to dismiss. At the subsequent hearing the court denied the motion. On October 18, 1989, the trial

---

[1]Although not a part of the trial court's findings of fact, at trial, Carolyn Bondy, the assistant principal, testified that less than a month earlier she had seen Shelby and his friend walk through the high school and out the door. Bondy approached them outside the building. They refused to stop. Nonetheless, Bondy advised them that they had to follow school procedures and get permission prior to visiting the school premises.

court entered judgment. The trial court found that Shelby knowingly entered and remained on McKnight Middle School property although he was not authorized to do so. The trial court also found that Shelby was warned that his entering and remaining were unlawful. Accordingly, the trial court found Shelby guilty of criminal trespass in the second degree.

Shelby appeals his convictions for both the October 31, 1988, incident and the March 22, 1989, incident.

## III

Shelby contends that RCW 9A.52.080 and RCW 28A.87-.055 are concurrent statutes, and that the State improperly charged him under RCW 9A.52.080, the "general" criminal trespass statute, rather than RCW 28A.87.055, the "special" statute which prohibits disobeying a valid order to leave school property.

Shelby was charged and convicted under RCW 9A.52.080, which provides:

> **Criminal trespass in the second degree.** (1) A person is guilty of criminal trespass in the second degree if he knowingly enters or remains unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree.
> (2) Criminal trespass in the second degree is a misdemeanor.

A person enters or remains "unlawfully" when he is not "licensed, invited, or otherwise privileged" to do so. RCW 9A.52.010(3).

RCW 28A.87.055[2] provides, in relevant part:

> **Wilfully disobeying school administrative personnel or refusing to leave public property, violations, when — Penalty.** (1) It shall be unlawful for any person to wilfully disobey the order of the chief administrative officer of a public school district, or of an authorized designee of any such administrator, to leave any motor vehicle, building, grounds or other property which is owned, operated or controlled by the school district if the person so ordered is under the influence of alcohol or drugs, or is committing, threatens to imminently commit or incites another to imminently commit any act which would disturb or interfere with or obstruct any lawful task,

[2]Recodified as RCW 28A.635.020 by Laws of 1990, ch. 33, § 4.

function, process or procedure of the school district or any lawful task, function, process or procedure of any student, official, employee or invitee of the school district. The order of a school officer or designee acting pursuant to this subsection shall be valid if the officer or designee reasonably believes a person ordered to leave is under the influence of alcohol or drugs, is committing acts, or is creating a disturbance as provided in this subsection.

. . . .

(4) Any person guilty of violating this section shall be deemed guilty of a misdemeanor and, upon conviction therefor, shall be fined not more than five hundred dollars, or imprisoned in jail for not more than six months or both so fined and imprisoned.

RCW 28A.87.055 requires proof that a person "wilfully disobey" an order to leave while RCW 9A.52.080 requires that a person "knowingly" enter or remain. RCW 28A.87-.055 also requires proof of an additional element, *i.e.,* intoxication, a disturbance, or the threat of a disturbance.

▆ When two statutes are concurrent, the special statute prevails over the general statute. *State v. Shriner,* 101 Wn.2d 576, 580, 681 P.2d 237 (1984). The purpose of the concurrent statute principle is twofold. It protects the defendant's constitutional right to equal protection under the law by preventing the prosecution from obtaining varying degrees of punishment while proving identical criminal elements. *State v. Hupe,* 50 Wn. App. 277, 280, 748 P.2d 263, *review denied,* 110 Wn.2d 1019 (1988). Furthermore, it ensures that courts do not interpret statutes in such a way as to impliedly repeal existing legislation. *Shriner,* 101 Wn.2d at 582–83.

In deciding whether statutes are concurrent, numerous cases have stated the rule as follows: two statutes are concurrent when the general statute is violated in each instance the special statute is violated. *See, e.g., Shriner,* 101 Wn.2d at 580; *Hupe,* 50 Wn. App. at 279–80. For example, in *State v. Farrington,* 35 Wn. App. 799, 803, 669 P.2d 1275 (1983), *review denied,* 100 Wn.2d 1036 (1984), the court held that the incest statute was not concurrent with the indecent liberties statute because the latter statute was not violated each time the former statute was violated.

Shelby contends that determining whether the general statute is violated in each instance the special statute is violated is only one approach for establishing whether statutes are concurrent. He asserts that it is also appropriate to frame the concurrent statute analysis as a test of whether the special statute prohibits conduct which is also prohibited by the general statute.

The State argues that the statutes here are not concurrent because a person who violates RCW 28A.87.055 does not necessarily violate RCW 9A.52.080. As the State points out, there are several examples of situations in which a person may violate one statute yet not violate the other statute. First, when a school official orders a disruptive or intoxicated student, as opposed to a nonstudent, to leave, the student's legal status on the school property is not immediately transformed into that of a "trespasser". Under Washington law, students possess extensive procedural rights before a school official may eject them from the school premises. *See* RCW 28A.58.1011. Therefore, a student who disobeys a school official's order to leave does not necessarily lose his license, privilege, or invitation to be on school property. Second, a person may violate RCW 28A.87.055 when he or she refuses to leave a school–owned motor vehicle. However, because the criminal trespass statute does not apply to motor vehicles, the person would not have necessarily violated RCW 9A.52.080.

Shelby concedes that by willfully disobeying a valid order to leave school–owned personal property, rather than "premises", it is possible to violate RCW 28A.87.055 without also violating RCW 9A.52.080. He contends, however, that this is of no consequence to this case because the conduct at issue here took place on school–owned "premises".

To support his contention Shelby points to *State v. Cann*, 92 Wn.2d 193, 595 P.2d 912 (1979). In *Cann*, the appellant was convicted of a violation of RCW 9A.88.080 (promoting prostitution in the second degree) after negotiating with police agents to establish them in a house of prostitution. 92 Wn.2d at 194. The appellant argued that

RCW 9A.28.030 punished as a felony the same conduct punished as a misdemeanor under RCW 9A.28.030 (prohibiting criminal solicitation). *Cann,* 92 Wn.2d at 196. The court held:

> RCW 9A.28.030 is a general statute covering solicitation, while RCW 9A.88.080 is a special statute, punishing conduct designed to institute, aid, or facilitate prostitution, including solicitation for such purposes. The rule is that where general and special laws are concurrent, the special law applies to the subject matter contemplated by it to the exclusion of the general.

*Cann,* 92 Wn.2d at 197.

Shelby points out that in *Cann,* too, it was theoretically possible to violate the promoting prostitution statute without also violating the criminal solicitation statute. He argues that this fact did not affect the *Cann* court's analysis, however, because solicitation was the conduct at issue in the case.

Thus, applying the test he asserts is appropriate, *i.e.,* that statutes are concurrent when the special statute prohibits conduct which is also prohibited by the general statute, Shelby concludes that the statutes here are concurrent because they both apply to the same conduct.

We disagree with Shelby's conclusion. Even accepting his analysis, it does not lead us to the result he urges. Under the test which he contends is appropriate, the threshold question to be decided is whether the two statutes address the same conduct. Because we conclude that here the two statutes do not address the same conduct, the analysis goes no further.

First, we are unpersuaded that, as Shelby contends, the legislative history of RCW 28A.87.055 indicates that RCW 28A.87.055 and RCW 9A.52.080 address the same conduct. The enactment of RCW 28A.87.055 does not demonstrate the Legislature's intent that persons who engage in the type of conduct to which it is directed should be punished under the special statute or not at all.

In *State v. Martinez,* 85 Wn.2d 671, 538 P.2d 521 (1975), *overruled on other grounds in State v. Smith,* 93 Wn.2d

329, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980), the court struck down former RCW 9.87.010(11), a statute which prohibited loitering on school property. The court found that the classes of persons established in RCW 9.87-.010(11) were not substantially related to the State's purpose of preventing disturbances. The court invited the Legislature to draft a new statute which would prohibit "activities that substantially interfere with and disrupt the educational process." *Martinez,* 85 Wn.2d at 684. The following year, the Legislature repealed former RCW 9.87-.010(11) and enacted RCW 28A.87.055 in its place. The new statute remedied the defect found in *Martinez* by explicitly providing that a person violates the statute only if he is intoxicated, or causes or threatens to cause a disturbance.

We agree with the State that the legislative history illustrates nothing more than the Legislature's perceived need for a law which allowed school officials to eject disruptive or intoxicated students from the school's premises. Moreover, as the State points out, an absurd result would follow if the statutes were concurrent. The State would not be able to prosecute trespassers on school property unless they are disruptive or intoxicated.

We conclude the two statutes do not address the same conduct. The willful disobedience statute gives school officials the power to control disruptive or intoxicated persons on school grounds. It attempts to coerce compliance with an order to leave school premises by making it a crime to refuse to leave. In contrast, the criminal trespass statute protects property rights. It ensures that persons without permission do not enter or remain upon the property of others. In addition, the two statutes have different elements. RCW 28A.87.055 requires willful disobedience by a person who is intoxicated, or is creating or threatening a disturbance; in contrast, RCW 9A.52.080 merely requires a person to unlawfully enter the property.

Therefore, we hold that because RCW 9A.52.080 and RCW 28A.87.055 do not apply to the same conduct, they are not concurrent statutes.

Accordingly, we affirm both convictions.

SCHOLFIELD, J., concurs.

GROSSE, C.J. (concurring)—I write separately to emphasize the fact that there may be a host of circumstances wherein the general statute might not apply, but the special statute will—circumstances that the Legislature may well have had in mind in maintaining the statutory scheme. Public schools provide a forum for a number of functions to which the public is both explicitly and implicitly invited, *e.g.*, athletic events, performances, open gyms, polling places, parent conferences, and other community related events. People attending these functions and events could certainly be considered "licensed, invited, or otherwise privileged" to enter or remain on school property, and the proper authority to withdraw that privilege rendered somewhat ambiguous. However, if a member of the public, or even an irate parent, is intoxicated or creating a disturbance as that conduct is proscribed by the special statute, no one can dispute the authority of the proper school official, pursuant to the special statute, to require the individual to leave.